**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**ABILENE DIVISION**

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX.
FILED

2016 FEB -3 AM 9: 38

DEPUTY CLERK

| | | |
|---|---|---|
| COLUMBIA MUTUAL INSURANCE COMPANY, | § § § | |
| Plaintiff & Counter Defendant, | § § | |
| v. | § § § | CIVIL ACTION NO. 1:15-CV-111-P-BL |
| CEDAR ROCK LODGE, LLC, | § § | |
| Defendant & Counter Claimant. | § | Referred to U.S. Magistrate Judge |

<u>REPORT AND RECOMMENDATION</u>

Pending before the Court are Plaintiff Columbia Mutual Insurance Company's ("Columbia") Motions to Dismiss (Docs. 10 and 20). The Court granted Defendant Cedar Rock Lodge's ("Cedar Rock") Motion for Leave to File Second Amended Answer and Counterclaim on January 25, 2016. (Doc. 27). Despite Cedar Rock's amendments to its counterclaims, Columbia still contends that Cedar Rock has failed to state claims on which relief can be granted. After considering Columbia's motions to dismiss and the applicable law, the Court recommends that Columbia's motion (Doc. 20) should be **GRANTED** in part and **DENIED** in part.

**I.   BACKGROUND**

Columbia filed suit against Cedar Rock seeking declaratory judgment that Cedar Rock's commercial insurance policy, issued by Columbia, does not provide coverage for claimed property damages to Cedar Rock's roof and interior. (Doc. 1, p. 3). Columbia asserts that Cedar Rock's claimed damages "occurred prior to the Policy's inception and the fortuity/known loss doctrine bars coverage for any pre-existing damage." (Doc. 1, p. 6).

On July 13, 2015, Cedar Rock filed its answer and counterclaims against Columbia on the bases of negligence, breach of contract, breach of the duty of good faith and fair dealing,

1

breach of fiduciary duty, unfair insurance practices, misrepresentation, fraud, violations of the Texas Insurance Code, and violations of the Texas Deceptive Trade Practices Act ("DTPA"). (Doc. 8, p. 9-19). On July 31, 2015, Columbia filed a motion to dismiss Cedar Rock's counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 10, p. 1).

On August 21, 2015, Cedar Rock moved for Leave to File its First Amended Answer and Counterclaim (Doc. 16), largely in response to Columbia's motion to dismiss (Doc. 10). On September 4, 2015, Columbia responded to Cedar Rock's motion essentially re-urging its motion to dismiss and claiming that Cedar Rock failed to cure Columbia's previously noted defects. (Doc. 17, p. 1-2). This Court granted Cedar Rock leave to amend and file its First Amended Answer and Counterclaim on November 20, 2015. (Doc. 18)

In response, Columbia filed a second motion to dismiss for failure to state a claim on December 4, 2015. (Doc. 20). Columbia claims that Cedar Rock's First Amended Answer and Counterclaim did not cure the deficiencies complained of in Columbia's first motion to dismiss. Columbia noted that "an amended pleading does not moot a previously-filed motion to dismiss that identifies defects that appear in the amended pleading." (Doc. 20, p. 2) (citing *Wilson v. Am. Home Assur. Co.*, No. 3:13-CV-3600-O, 2014 WL 1318384, at *1 n.1 (N.D. Tex. Apr. 2, 2014)).

On December 18, 2015, Cedar Rock moved for and was later granted an extension of time to file a response to Columbia's latest motion to dismiss.[1] Then, in addition to a response, Cedar Rock filed a Motion for Leave to File a Second Amended Answer and Counterclaim on January 8, 2016. (Doc. 25). Finally, on January 19, 2016, Columbia replied to Cedar Rock's latest motion for leave to amend. (Doc. 26). In response, Columbia essentially contends that the same deficiencies pervade Cedar Rock's proposed amendment and that it would be futile for the

---

1 Cedar Rock's response was due on December 25, 2015, so the Court extended the deadline to respond until January 8, 2016.

Court to allow it. In its Order dated January 25, 2016, (Doc. 27), the Court found that Cedar Rock sufficiently pleaded the elements of its breach of contract counterclaim and, as such, granted Cedar Rock leave to file its Second Amended Answer and Counterclaim. However, the Court, having found at least one plausible counterclaim, stopped short of analyzing all of Cedar Rock's counterclaims under the 12(b)(6) standard. The Court now addresses Columbia's motions to dismiss for failure to state a claim.

## II.    LEGAL STANDARD

Motions to dismiss for failure to state a claim are appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim. FED. R. CIV. P. 12(b)(6). When reviewing a 12(b)(6) motion, courts are to accept "all well-pleaded facts as true and [view] those facts in the light most favorable to the plaintiffs." *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 634 (5th Cir. 2014) (citation omitted). To avoid dismissal on a Rule 12(b)(6) motion, "a plaintiff must plead sufficient facts to 'state a claim to relief that is plausible on its face.'" *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, federal courts need not "accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"). For a 12(b)(6) motion, the "court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). "[The Court's] task, then, is to determine

whether the plaintiff stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Thompson v. City of Waco, Texas*, 764 F.3d 500, 503 (5th Cir. 2014).

Cedar Rock's live pleading is its Second Amended Answer and Counterclaim. (Doc. 28). Although this amended counterclaim supersedes the two prior counterclaims, Columbia's Rule 12(b)(6) motions persist and are not necessarily moot. *See Wilson*, 2014 WL 1318384, at *1 n.1. Instead, the Court "may treat [Columbia'] motion[s] as directed to the live pleading [if] the defects identified in the prior [counterclaim] also appear in the amended [counterclaim]." *See id.*; *see also People's Choice Home Loan, Inc. v. Mora*, No. 3:06-CV-1709-G, 2007 WL 120006, at *2 (N.D. Tex. Jan. 18, 2007).

### III.   ANALYSIS

For clarification purposes, the Court finds it helpful to list Cedar Rock's counterclaims by pleading:

> **Original Answer and Counterclaim**: (1) negligence, (2) breach of contract, (3) violations of the Texas DTPA and tie-in statutes, (4) violations of the Texas Insurance Code, (5) breach of common-law duty of good faith and fair dealing, (6) breach of fiduciary duty, (7) unfair insurance practices, (8) misrepresentation, and (9) fraud by negligent representation. (Doc. 8, p. 9-19).

> **First Amended Answer and Counterclaim**: (1) breach of contract, (2) violations of the Texas DTPA and tie-in statutes, (3) violations of the Texas Insurance Code, (4) breach of common-law duty of good faith and fair dealing, (5) unfair insurance practices, and (6) misrepresentation. (Doc. 19, p. 7-15).

> **Second Amended Answer and Counterclaim**: (1) breach of contract, (2) violations of the Texas DTPA and tie-in statutes, (3) violations of the Texas Insurance Code, and (4) breach of common-law duty of good faith and fair dealing. (Doc. 28, p. 7-12).

As a housekeeping matter, the Court recommends that Columbia's first motion to dismiss (Doc. 10) be denied as moot because it is virtually identical in substance—except that it

addresses all of the original counterclaims—to Columbia's second motion to dismiss—which addresses only the remaining counterclaims in Cedar Rock's First Amended Answer and Counterclaim. Accordingly, the Court will direct its attention to Columbia's second motion to dismiss (Doc. 20).

As noted, Cedar Rock's live pleading alleges four causes of action: breach of contract, violations of the DTPA and tie-in statues, violations of the Texas Insurance Code, and breach of good faith. (Doc. 28, p. 7-12). As part of its analysis regarding leave to amend, the Court concluded that Cedar Rock had pleaded a plausible breach of contract claim in its Second Amended Answer and Counterclaim. (Doc. 27). The Court did not analyze the remaining causes of action in that Order, but will do so now.

## A. Texas Insurance Code Violations

Cedar Rock contends that Columbia violated at least six sections of the Texas Insurance Code ("TIC"). (Doc. 28, p. 9). The gravamen of Columbia's response is that Cedar Rock's allegations are mere recitations of the statutory language devoid of material facts. (Doc. 20, p. 5-6). The Court will review each TIC allegation to determine if Cedar Rock has pleaded a plausible claim for relief.

### i.   TIC §§ 541.060(a)(2) and 542.003(b)(4)[2]

Cedar Rock avers that Columbia "engaged in certain unfair or deceptive acts or practices," including failing "to attempt in good faith, to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear." (Doc. 28, p. 9). TIC § 541.060(a)(2) reads:

> (a) It is an unfair method of competition or an unfair or deceptive
> act or practice in the business of insurance to engage in the

---

2 Cedar Rock alleges that Columbia violated "542.003(4)" but the Court will construe this as pertaining to § 542.003(b)(4).

> following unfair settlement practices with respect to a claim by an insured or beneficiary:
>
> (2) failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of: (A) a claim with respect to which the insurer's liability has become reasonably clear . . . .

TEX. INS. CODE ANN. § 541.060(a)(2)(A) (West 2005). By comparison, § 542.003(b)(4) reads:

> (b) Any of the following acts by an insurer constitutes unfair claim settlement practices:
>
> (4) not attempting in good faith to effect a prompt, fair, and equitable settlement of a claim submitted in which liability has become reasonably clear;

TEX. INS. CODE ANN. § 542.003(b)(4). In support, Cedar Rock elaborates that Columbia dispatched insurance adjuster Jack French ("French") to survey the damages to its building. Cedar Rock contends that French conducted "a results based investigation" in arriving at his damages estimate of $2,478.15. Cedar Rock argues that French's damage estimate is "unfair and inequitable" when compared to the damages estimate of $488,350.09 prepared by Forensic Building Science, Inc., a private adjuster employed by Cedar Rock. (Doc. 28, p. 9). Additionally, Cedar suggests that Columbia and French "knew or should have known once Cedar Rock provided evidence of its covered damages,[3] that the hail and wind damages covered under the Policy included . . . the replacement of the subject property's roof and associated commercial air conditioning units." (Doc. 28, p 10-11).

Albeit in an earlier pleading, Columbia counters that Cedar Rock's TIC and DTPA allegations fail to satisfy the pleading requirements found in the Federal Rules of Civil Procedure, specifically rules 8(a) and 9(b), and should be dismissed. (Doc. 20, p. 3). Columbia adds that "[c]laims alleging violations of the Texas Insurance Code and the DTPA and those

---

3 Cedar Rock references the attached CoreLogic hail verification report and Forensic Building Science's estimate.

asserting fraud, fraudulent inducement, fraudulent concealment, and negligent misrepresentation are subject to the requirement of [FRCP] Rule 9(b)." (Doc. 20, p. 2).

Rule 9(b) requires that any party alleging fraud or mistake "must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Wallace v. Tesoro Corp.*, 796 F.3d 468, 480 (5th Cir. 2015) (citation omitted). "Rule 9(b) applies by its plain language to all averments of fraud, whether they are part of a claim of fraud or not." *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001). Indeed, "claims alleging violations of the Texas Insurance Code and the Deceptive Trade Practices Act . . . are subject to the requirements of Rule 9(b)." *Omni USA, Inc. v. Parker-Hannifin Corp.*, 798 F. Supp. 2d 831, 836 (S.D. Tex. 2011). *See also Berry v. Indianapolis Life Ins. Co.*, 608 F. Supp. 2d 785, 800 (N.D. Tex. 2009) (applying Rule 9(b) to claims under the DTPA and Chapter 541 of the Texas Insurance Code).

Cedar Rock fails to include any facts regarding time, place, and content of any false representation during Columbia's attempt to effectuate settlement of the insurance claim. *See Tesoro Corp.*, 796 F.3d at 480. Moreover, Cedar Rock does not allege that French—or any other agent of Columbia—made a false misrepresentation when handling this insurance claim. *Id.* Instead, Cedar Rock relies on the substantial disparity between French's damage estimate and Forensic Building Science's damage estimate—a difference of $485,871.94—to infer that Columbia did not make a good faith effort to settle Cedar Rock's claim. This evidence will not suffice. Fraud claims, like this violation of the TIC, must be pleaded with particularity. *See* FED.

R. CIV. P. 9(b). As such, Cedar Rock cannot point to the disparate damage estimates without offering more factual support as to the alleged fraud.

Accordingly, the Court recommends that Cedar Rock counterclaims based on TIC §§ 541.060(a)(2) and 542.003(b)(4) be dismissed for failure to state a claim on which relief can be granted. *See* FED. R. CIV. P. 12(b)(6).

### ii.   TIC 541.060(a)(3)

Cedar Rock claims that Columbia "did not provide Cedar Rock a reasonable explanation as to why it was only going to pay less than 1% of the covered damages owed under the Policy to settle [the claim]." (Doc. 28, p. 9). Again, Columbia, in general, asserts that Cedar Rock's allegations are naked assertions devoid of the factual enhancement required to support it claims. (Doc. 20, p. 4).

TIC Section 541.060(a)(3) advises that an insurer engages in unfair settlement practice by "failing to promptly provide to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim." TEX. INS. CODE ANN. § 541.060(a)(3) (West 2005). "The statute does not obligate an insurer to provide an insured every piece of information . . . the insurer has regarding the offer or the investigation." *Mid-Continent Cas. Co. v. Eland Energy, Inc.*, 795 F. Supp. 2d 493, 534 (N.D. Tex. 2011), *aff'd,* 709 F.3d 515 (5th Cir. 2013). Rather, an insurer is required "to provide a *reasonable explanation* of the factual or legal basis in the policy, in relation to the facts or applicable law." *Id.* (emphasis in original).

Again, Cedar Rock, relying on the vast difference between the two damage estimates, alleges that Columbia violated the TIC by not reasonably explaining why it chose to favor French's estimate over Forensic Building Science's estimate. Cedar Rock fails to provide any

factual basis for its belief that Columbia's explanation for denying the claim was unreasonable. Therefore, the Court finds Cedar Rock's allegation to be factually deficient. *See Gentilello*, 627 F.3d at 544.

As an aside, the Court notes that Columbia's original complaint seeks declaratory judgment that Cedar Rock's damages were not covered under the relevant insurance policy.[4] (Doc. 1). It its complaint, Columbia avers that it conducted at least two inspections of Cedar Rock's roof and determined that the damage to the roof membrane was "caused by wear and tear, shrinking, deterioration, and/or poor installation and maintenance, and mechanical tears due to foot traffic." (Doc. 1, p. 3). Columbia claims that it "advised Cedar Rock of the Policy's coverage and that no additional payment would be issued for the claimed roof damage and related water intrusion." (Doc. 1, p. 3). Nevertheless, Cedar Rock contends that it did not receive a "reasonable explanation" of Columbia's decision to pay only $2,487.15 in damages.

Even so, the Court recommends that Cedar Rock TIC § 541.060(a)(3) against Columbia be dismissed for failure to state a claim for which relief can be granted. *See* FED. R. CIV. P. 12(b)(6).

### iii. TIC § 561.060(a)(4)

Cedar Rock claims that Columbia violated TIC § 541.060(a)(4) by "failing within a reasonable time to affirm or deny coverage of a claim to a policyholder." (Doc. 28, p. 10). Cedar Rock's entire allegation related to this section is a verbatim recitation of the statutory language. *See* TEX. INS. CODE ANN. § 541.060(a)(4). For this reason alone, Cedar Rock's allegation pertaining to TIC § 541.060(a)(4) fails. *See Twombly,* 550 U.S. at 555. Beyond that, Columbia claims that Cedar Rock submitted a notice of loss on June 19, 2014, and that Columbia inspected the damage on June 20, 2014. (Doc. 1, p. 2). After applying the deductible, Columbia issued

---

4 The Court makes no findings as to the merits of Columbia's original complaint at this time.

payment to Cedar Rock. (Doc. 1, p. 2). Then, on April 3, 2015, Cedar Rock notified Columbia of additional damage. In response, Columbia employed Pie Consulting and Engineering to conduct another inspection on April 28, 2015. (Doc. 28, p. 31). Following that re-inspection, Columbia notified Cedar Rock that the damages to the roof were still not covered under the policy and Columbia filed this lawsuit seeking declaratory judgement on June 8, 2015. (Doc. 1).

Cedar Rock's TIC § 541.060(a)(4) is not even remotely substantiated with facts attempting to show the existence of a viable claim. This allegation, as pleaded, does not present enough facts to "state a claim to relief that is plausible on its face." *See Gentilello*, 627 F.3d at 544. Therefore, the Court recommends that Cedar Rock's TIC § 541.060(a)(4) allegation against Columbia be dismissed for failure to state a claim for which relief can be granted. *See* FED. R. CIV. P. 12(b)(6).

### iv.   TIC § 541.060(a)(7)

Next, Cedar Rock attempts to show that Columbia refused to pay its claim without conducting a reasonable investigation, a violation of TIC § 541.060(a)(7). In support, Cedar Rock alleges that French's damage estimate identified recent hail impacts to Cedar Rock's rooftop air conditioning units and "other rooftop structures," but that Columbia only purported to pay the damages for the air conditioning units and not the "other rooftop structures." (Doc. 28, p. 10) (citing French's damage estimate (Doc. 28, p. 29-30) and Columbia's coverage letter (Doc. 28. p. 31-37)).

French's damage estimate—Cedar Rock's own point of reference—identified costs associated with employing an HVAC technician, combing and straightening the fins on an air conditioning condenser, combing and straightening the fins on eight air conditioning units, and replacing six motorized R&R dampers. (Doc. 28, p. 30). After calculating for depreciation and

Cedar Rock's deductible, Columbia arrived at a damages amount of $2,478.15. (Doc. 28, p. 29). Despite Cedar Rock's contention, Columbia did pay Cedar Rock for motorized R&R dampers, which would qualify as an "other rooftop structures." Therefore, Cedar Rock's contention is erroneous. Finally, Cedar Rock submitted affidavits from an adjuster and an engineer claiming that Columbia did not perform a reasonable inspection and that, if it had, it would have identified further roof damage. (Doc. 28, p. 23-26). As noted, Columbia employed both French and Pie Consulting and Engineering to inspect the damages to Cedar Rock's roof and both determined that damage was "not the result of hail damage from the subject storm." (Doc. 28, p. 31). In any event, the Court finds that Cedar Rock's allegation to be conclusory, lacking any factual information as to what Columbia might have done differently.

To avoid dismissal under 12(b)(6), Cedar Rock was required to plead "factual content that allows the court to draw the reasonable inference that [Columbia] is liable for the misconduct alleged." *See Gentilello*, 627 F.3d at 544. Cedar Rock has not met this burden. Accordingly, the Court recommends that Cedar Rock's TIC § 541.060(a)(7) allegation against Columbia be dismissed for failure to state a claim for which relief can be granted. *See* FED. R. CIV. P. 12(b)(6).

### v.   TIC § 541.061(1)

Next, Cedar Rock alleges that Columbia made "an untrue statement of material fact in representing to Cedar Rock that its claims would be adjusted fully and fairly. More specifically, Mr. French's unreasonable investigation and [Columbia's] refusal to pay Cedar Rock the remaining $485,871.94 due and owed to it under its Policy . . . ." (Doc. 28, p. 10). But, this being an allegation of false representation, required Cedar Rock to plead "the particulars of time, place, and contents of the false representations, as well as the identity of the person making the

misrepresentation and what he obtained thereby." *See Tesoro Corp.*, 796 F.3d at 480. Instead, Cedar Rock, once again, relies on the sizable disparity between the damage estimates for the proposition that Columbia failed to adjust its claim fully and fairly. That approach lacks the requisite information needed to plead a fraud claim. Cedar Rock does not address the time, place, or contents of the "untrue statement of material fact" nor does it identify a speaker of the alleged fraudulent statement. *See id.*

Consequently, the Court recommends that Cedar Rock's TIC § 541.061(1) allegation against Columbia be dismissed for failure to state a claim for which relief can be granted. *See* FED. R. CIV. P. 12(b)(6).

## B. Texas DTPA allegations

The DTPA allows a consumer to maintain an action where "the use or employment by any person of an act or practice in violation of Chapter 541, [Texas] Insurance Code" constitutes a "producing cause of economic damages or damages for mental anguish." TEX. BUS. & COM. CODE ANN. § 17.50 (West 2005); *See In re Carroll*, 464 B.R. 293, 323 (Bankr. N.D. Tex. 2011), *aff'd sub nom. Carroll v. Farooqi*, 486 B.R. 718 (N.D. Tex. 2013).

In this case, Cedar Rock pleaded that it is a consumer under the DTPA, as defined in the Texas Business and Commerce Code § 17.45(a). (Doc. 28, p. 7). Then, Cedar Rock directed the Court to its TIC claims to support its DTPA allegations. (Doc. 28, p. 8). But, as previously discussed, Cedar Rock failed to plead a plausible claim for relief against Columbia under TIC § 541. As such, Cedar Rock cannot maintain a cause of action under the DTPA for its claimed violations, as pleaded, of TIC § 541. *See In re Carroll*, 464 B.R. at 323.

As such, the Court recommends that Cedar Rock's DTPA claims against Columbia be dismissed for failure to state a claim for which relief can be granted. *See* FED. R. CIV. P. 12(b)(6).

### C. Breach of Common Law Duty of Good Faith and Fair Dealing

In the insurance context, "'[a] breach of the duty of good faith and fair dealing will give rise to a cause of action in tort that is separate from any cause of action for breach of the underlying insurance contract.'" *Lawyers Title Ins. Corp. v. Doubletree Partners, L.P.*, 739 F.3d 848, 869 (5th Cir. 2014) (quoting *Viles v. Sec. Nat'l Ins. Co.*, 788 S.W.2d 566, 567 (Tex.1990)). But, "'the threshold of bad faith is reached only when the breach of contract is accompanied by an independent tort.'" *Id.* (quoting *Union Bankers Ins. Co. v. Shelton*, 889 S.W.2d 278, 283 (Tex. 1994)). "A cause of action is stated when the insured alleges that the insurer had no reasonable basis for the denial or delay in payment of a claim and that the insurer knew or should have known of that fact." *Id.* That said, "the evidence pointing to bad faith 'must relate to the tort issue of no reasonable basis for denial or delay in payment of a claim, not just to the contract issue of coverage.'" *Id.* (quoting *Lyons v. Millers Cas. Ins. Co. of Texas*, 866 S.W.2d 597, 600 (Tex. 1993)).

In this case, Cedar Rock alleges that Columbia breached its duty of good faith by "inadequately adjusting and making an offer on Cedar Rock's claims without any reasonable basis, and by failing to conduct a reasonable investigation to determine whether there was a reasonable basis for this denial." (Doc. 28, p. 11). Additionally, Cedar Rock claims that Columbia breached its duty of good faith by unreasonably denying payment of Cedar Rock's claim when it knew or should have known that Cedar Rock's "storm-related claims" were covered. (Doc. 28, p. 11). Columbia argues that Cedar Rock's bad-faith claims are factually

inadequate and conclusory. (Doc. 20, p. 4). While Cedar Rock's bad-faith allegations are not fact laden, they do assert that Columbia had no reasonable basis for its denial of Cedar Rock's claim and that Columbia should have known that it was liable for the claims. According to *Doubletree Partners*, that is sufficient to plead a breach of good faith and fair dealing cause of action. *See* 739 F.3d at 869 ("A *cause of action is stated* when the insured alleges that the insurer had no reasonable basis for the denial or delay in payment of a claim and that the insurer knew or should have known of that fact.") (emphasis added).

Accordingly, the Court recommends that Columbia's motion to dismiss Cedar Rock's breach of good faith and fair dealing cause of action be denied.

## IV.   CONCLUSION

The Court notes that Cedar Rock has attempted three times to plead its causes of action, each time pairing down the number of claims it brings. In its motions to dismiss and responses to Cedar Rock's amendments, Columbia repeatedly alleges that Cedar Rock's causes of actions are factually deficient. Although Cedar Rock claims to have cured the deficiencies, the Court **RECOMMENDS** that:

1)   Columbia first motion to dismiss (Doc. 10) be **DENIED** as **MOOT**.

In reference to Columbia's second motion to dismiss (Doc. 20), the Court **RECOMMENDS** that:

2)   Columbia motion to dismiss Cedar Rock's breach of contract claim be **DENIED** for the reasons stated in the Court's January 25, 2016 Order (Doc. 27);

3) Cedar Rock's Texas Insurance Code claims be **DISMISSED with PREJUDICE** for failure to state a claim on which relief can be granted;

3) Cedar Rock's Texas Deceptive Trade Practices Act claims be **DISMISSED with PREJUDICE** for failure to state a claim on which relief can be granted; and

4) Columbia's motion to dismiss Cedar Rock's breach of good faith and fair dealing claim be **DENIED** for the reasons stated herein.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

**SO ORDERED**.

DATED February ___3___, 2016.

E. SCOTT FROST
**UNITED STATES MAGISTRATE JUDGE**